**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION, UNDER 28 U.S.C. § 1782, OF PUBLIC JOINT-STOCK COMPANY BANK OTKRITIE FINANCIAL CORPORATION AND PUBLIC JOINT-STOCK COMPANY NATIONAL BANK TRUST | 22 Misc. 50 |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE*
APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782
<u>TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEDINGS</u>**

February 14, 2022

STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

    The Parties and Other Key Entities........................................................................................ 2

    The LCIA Arbitration Proceedings........................................................................................ 2

    The English High Court Proceedings .................................................................................... 5

    Coniston's Efforts to Obscure and Shield Their Assets......................................................... 5

    The Relevance of the Records Sought in This Proceeding................................................... 6

DISCUSSION .................................................................................................................................... 7

    I.    The Petitioners Satisfy the Statutory Requirements of Section 1782 ...................... 7

    II.    The *Intel* Discretionary Factors Weigh in Favor of Granting the Application ....... 9

    III.    No Other Factors Weigh Against the Requested Discovery................................. 11

    IV.    The Application Should be Granted *Ex Parte*. ..................................................... 12

CONCLUSION................................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Cases**

*In re Application of Galaxy Energy and Resources Co. Pte. Ltd.*,
  No. 19-MC-287-LTS (S.D.N.Y. July 22, 2019) ...................................................................8

*In re Application of Hornbeam Corp.*,
  No. 14-MC-424-VSB, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ...................................11

*In re Application of Lake Holding & Fin. S.A.*,
  No. 20-MC-652, 2021 WL 2581427 (S.D.N.Y. June 23, 2021)..........................................9, 11

*In re Application of Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992)..................................................................................................11

*Brandi-Dohrn v. 1KB Deutche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ....................................................................................................7

*In re Edelman*,
  295 F.3d 2171 (2d Cir. 2002)................................................................................................7

*In re Godfrey*,
  526 F. Supp. 2d 417 (S.D.N.Y. 2007)...................................................................................7

*Gushlak v. Gushlak*,
  486 F. App'x 215 (2d Cir. 2012) ........................................................................................12

*Intel Corp. v. Advanced Micro Devices*,
  542 U.S. 241 (2004)..................................................................................................... *passim*

*Lancaster Factoring Co. Ltd. v. Mangone*,
  90 F.3d 38 (2d Cir. 1996) ......................................................................................................8

*In re Letter of Request From Boras Dist. Court*,
  153 F.R.D. 31 (E.D.N.Y. 1994)..........................................................................................12

**Statutes**

28 U.S.C. § 1782......................................................................................................... *passim*

## INTRODUCTION

By this *ex parte* application, Public Joint-Stock Company Bank Otkritie Financial Corporation ("Bank Otkritie") and Public Joint-Stock Company National Bank Trust ("NBT," and collectively, the "Petitioners"), seek, under 28 U.S.C. § 1782 ("Section 1782"), limited discovery from three banking entities—Citibank, N.A. ("Citibank"), Deutsche Bank Trust Company Americas, and Deutsche Bank Securities, Inc. (collectively, "Deutsche Bank," and together with Citibank, the "Respondents")—for use in two foreign proceedings.

The origin of the application is a complex fraudulent scheme which is the subject of arbitration proceedings in the London Court of International Arbitration (the "Arbitration Proceedings" in the "LCIA") as well as parallel proceedings in the High Court of Justice in London (the "High Court"). The Petitioners are parties to the two proceedings, and have established, via a favorable award in the LCIA proceedings, that they were the victims of a fraud by the prominent Russian businessman named Boris Mints, his family, and his affiliated entities. At the heart of the fraud is Coniston Management Limited ("Coniston"), which the Mints family used to, in essence, render nearly worthless approximately USD $500 million in loans from Mints-affiliated entities to Bank Otkritie.

The discovery the Petitioners seek consists of correspondent banking records that the Petitioners expect will shed light on the Coniston's financial mischief, and that the Petitioners expect to use in at least two ways. First, the evidence will be relevant to the merits of the High Court proceedings, which are ongoing. Second, the evidence will be relevant to anticipated enforcement proceedings of the LCIA proceedings, which has already resulted in a finding of liability against Coniston.

Courts interpret Section 1782 to liberally to support the statutory purpose of providing assistance to foreign tribunals, and, with that salient purpose in mind, courts in this District

routinely authorize discovery under 28 U.S.C. § 1782 with respect to banking records similar to what the Petitioners seek here.

The Application should be granted.

## BACKGROUND

### The Parties and Other Key Entities

Bank Otkritie is one of Russia's largest full-service commercial banks, with headquarters in Moscow. In August 2017, Bank Otkritie was placed into administration by the Central Bank of Russia ("CBR") and required a USD $8 billion bail-out using public funds. (Declaration of Neil Dooley, dated February 14, 2022 ("Dooley Decl.") ¶ 4.)

NBT was, at the time of the near-collapse of Bank Otkritie, owned by the Otkritie Group. It too is now under the control of the CBR. (*Id*. ¶ 5.)

Coniston is a British Virgin Islands company which, as detailed below, was deeply involved in a fraud perpetrated on the Petitioners. (*Id*. ¶ 6.)

Citibank and Deutsche Bank are banks that have or had correspondent banking relationships with banks used by Coniston, namely Rigensis Bank in Latvia and Ardshinbank in Armenia, respectively. (*Id*. ¶¶ 7, 36-37.)

### The LCIA Arbitration Proceedings

The LCIA arbitration proceedings that are the subject of this application arose from a complex series of transactions in August 2017 that were designed to defraud the Petitioners and were directed and implemented by and for the benefit of (i) the family of Boris Mints, a prominent Russian businessman who co-founded what became the Otkritie Group along with another co-defendant in the High Court proceedings, Vadim Belyaev (now known as Vadim Wolfson); and (ii) O1 Group Limited (the "O1 Group"), a holding company affiliated with the Mints family. (*Id*. ¶ 9.) Mr. Mints fled Russia in 2018, shortly before he was charged with fraud

as a result of causing damage of some USD $500 million to Bank Otkritie, just before its near-collapse and bailout by the Russian government. (*Id*.)

Immediately prior to the transactions at issue, certain companies in the O1 Group had borrowings of approximately USD $500 million from Bank Otkritie. The loans were on commercial terms, performing, and short-term. (*Id*. ¶ 10.) The loans were largely secured by pledges of valuable shares in O1 Properties Limited (the owner of a substantial real estate portfolio in Moscow) by Coniston and two related entities. (*Id*. ¶ 10.)

The essence of the fraudulent scheme was (i) to cause a special-purpose vehicle with no material assets to issue long-term, illiquid and unrated bonds, with negligible interest payable until maturity in 2032; (ii) to induce the Petitioners to purchase those bonds for much more than they were really worth; and (iii) for the proceeds to be used by the O1 Group borrowers to repay their loans to Bank Otkritie early, thereby purportedly extinguishing their debts and terminating the associated security agreements. (*Id*. ¶ 11.)

As a result, Bank Otkritie lost the benefit of performing and largely secured loans on commercial terms that were approaching their maturity, in return for illiquid and unmarketable bonds on patently uncommercial terms, and of much lower (if any) value, with maturity in 2032 (the "Replacement Transaction"). (*Id*. ¶ 13.)

In January and February 2018, Coniston, along with the two other entities that had pledged shares in O1 Properties Limited for loans involved in the Replacement Transaction, commenced the LCIA arbitration proceedings, seeking declarations that their pledges of stock had been validly terminated in the Replacement Transaction, and that the Replacement Transaction was a *bona fide* commercial transaction. (*Id*. ¶ 14.)

The Petitioners asserted, in their counterclaims, that the Replacement Transaction was a fraud that was orchestrated by and for the benefit of the Mints family and the O1 Group. Accordingly, the critical question in the Arbitration Proceedings was whether the Replacement Transaction was a dishonest scheme or an honest commercial bargain. (*Id*. ¶ 15.)

On June 24, 21, the Tribunal issued its Award. (Ex. A.)[1] In summary, the Tribunal ruled against Coniston and the other LCIA claimants in every material respect. (Dooley Decl. ¶ 16.) The Tribunal found that the Replacement Transaction was a fraud orchestrated by and for the benefit of the Mints family and the O1 Group. (*Id*.)

As is relevant here, the Tribunal found that Mints family used and directed Coniston as part of the fraudulent Replacement Transaction, and that the knowledge and fraudulent activity of the Mints family should be attributed to Coniston. (*See* Ex. A, at 446-47 (¶¶ 49-54).) Accordingly, the Tribunal concluded that Coniston and the other LCIA claimants are liable to compensate the Petitioners for the loss that they have suffered. (*See id.*, at 468 (¶ 81(j)).)

The Petitioners are seeking damages of around USD $500 million from Coniston and costs of £2.7 million. (Dooley Decl. ¶ 18.) Those amounts have yet to be finally determined, but in all likelihood the Petitioners will be awarded significant sums in damages and costs following a final hearing scheduled for May 2022. (*Id*.)

In the meantime, Coniston has not challenged the liability findings in the Award, and the Award is enforceable. (*Id*. ¶ 19.) The Award has been recognized in the BVI (where Coniston is incorporated), and an application for recognition has been filed in Russia, which is where the fraud took place, and in Cyprus (where the other LCIA Claimants are incorporated). (*Id*.)

---

[1] Citations in the form "Ex. [letter]" refer to the exhibits to the accompanying Declaration of Neil Dooley. Citations in the form "Ex. [number] refer to the exhibits to the accompanying Declaration of Charles Michael.

**The English High Court Proceedings**

In June 2019, the Petitioners filed a separate proceeding in the High Court in against members of the Mints family, and later joined their alleged co-conspirators and a trust the Mints family allegedly used to fraudulently transfer their assets. (*Id*. ¶ 20.)

Like the LCIA arbitration, the High Court proceedings center on the Replacement Transaction. In the High Court Proceedings, the Petitioners also accuse the Mints family of associated fraudulent transfer activity aimed at placing their assets beyond the reach of the Petitioners, so as to avoid accountability for the Replacement Transaction. (*Id.* ¶ 21 & Ex. B (operative pleading in the High Court).) The High Court proceedings are ongoing, with liability yet to be determined as to any of the defendants. (*Id.*)

**Coniston's Efforts to Obscure and Shield Their Assets**

The Petitioners have ample reason to believe that Coniston has been involved in a broader fraudulent scheme described in the High Court Proceedings to shield assets from the Petitioners, and to evade any responsibility for the Replacement Transaction. (*Id.* ¶ 23.)

First, as the LCIA Tribunal found, after the Replacement Transaction, Coniston transferred the shares that had been pledged to Bank Otkritie another BVI company. (Ex. A, at 275-76 (¶ 872(c)).) The Petitioners' investigation has been unable to uncover what consideration, if any, was provided to Coniston in exchange, or where that consideration is located today. (Dooley Decl. ¶ 24.)

Second, the Tribunal found extensive financial mischief with respect to the O1 Group, which raises suspicion that the same actors have orchestrated similar mischief with respect to Coniston. (*Id.* ¶ 25.) Specifically, the Tribunal found that the recorded financial position of the O1 Group, showing USD $4 billion in assets, was wholly unreliable because those assets mainly comprised loans which were due from related parties, and were in fact illusory. (*Id.*) The

Tribunal described the accounts as "highly misleading" and finding that the value of loan receivables on the books "was essentially whatever O1 asserted," and that "it is not tenable to assert that these loans were worth anything like 100% of their face value." (Ex. A, at 50-51 (¶ 192).)

Third, the financial information concerning Consiton available to the Petitioners reveals multiple red flags suggestive of similarly fraudulent financial accounting. In summary, financial documents indicate Coniston having very substantial assets (more than USD $1 billion), but then these suddenly disappeared under highly suspicious circumstances. (Dooley Decl. ¶¶ 27-30.)

**The Relevance of the Records Sought in This Proceeding**

The Petitioners are seeking banking records relating to Coniston in anticipation of using them in foreign proceedings in at least two ways.

First, evidence showing where Coniston has moved its assets (including assets received in connection with the pledged shares that were essentially stolen from Bank Otkritie in the Replacement Transaction) are highly relevant to the High Court proceeding. (*Id*. ¶ 32.) As discussed, the Mints family has already used Coniston for fraud, and there are powerful indicators that further misdeeds have occurred. (*Id*.)

Second, the banking records would also be highly relevant to judgment recognition and enforcement proceedings from the LCIA award. (*Id.* ¶ 34.) The Petitioners are anticipating a significant final financial award in the LCIA proceedings, given that the Tribunal has already ruled on the issue of liability against Coniston. (*Id*.) The Petitioners intend to initiate enforcement proceedings wherever they can locate assets of Coniston, and this is likely to involve claims against third parties who have received the benefit of those assets. (*Id*.) Banking records will likely shed light on where Coniston has moved its assets. (*Id*.)

# DISCUSSION

Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a foreign or international tribunal," and that such order may be issued "upon the application of any interested person." 28 U.S.C. § 1782. If these requirements are satisfied, the court may, in its discretion, grant an application for discovery. The Supreme Court has identified four factors that courts consider in exercising that discretion. *See Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264-75 (2004). As set forth below, the Petitioners satisfy the statutory requirements for relief under § 1782, and the discretionary factors weigh in favor of granting the requested relief, as well.

## I. THE PETITIONERS SATISFY THE STATUTORY REQUIREMENTS OF SECTION 1782

A court may grant discovery under Section 1782 if "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. 1KB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). All of the statutory requirements are satisfied here.

*First*, the Respondents are both found in the Southern District of New York. A respondent is considered to be found in a district if it is physically present there. *See In re Edelman*, 295 F.3d 2171, 179-80 (2d Cir. 2002). A company will also be found where it is incorporated, headquartered, or where it is engaged in "systematic and continuous activities." *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007). In this case, the Respondents are physically located in New York, based on public filings with the SEC and the New York Department of Financial Services. (Exs. 1-3.) In addition, courts in this District have authorized

- 7 -

Section 1782 discovery from these same Respondents. (*See*, *e.g.*, Ex. 4 (Order, *In re Application of Galaxy Energy and Resources Co. Pte. Ltd.*, No. 19-MC-287-LTS, ECF No. 12 (S.D.N.Y. July 22, 2019).).

*Second*, the discovery sought is for use in foreign proceedings. The Second Circuit has held that a "proceeding" for purposes of § 1782 must be one "in which an adjudicative function is being exercised." *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996). This adjudicative proceeding may be one which is currently pending, or, as the Supreme Court has made clear, "the 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel*, 542 U.S. at 247. This requirement is amply satisfied here.

Specifically, the Petitioners are parties to ongoing proceedings against members of the Mints family in the High Court of Justice in London. In the High Court Proceedings, Boris Mints has been accused of fraudulent transfer activity aimed at placing his assets beyond the reaching of the Petitioners in order to avoid accountability for the Replacement Transaction. The records sought would provide evidence of the disposition of Coniston's assets, including the disposition of any assets received as consideration for the pledged shares (of which the Petitioners were fraudulently deprived). As discussed above, the Mints family has already used Coniston for fraud, and there is ample evidence of additional misconduct. Such discovery would be highly relevant to the High Court Proceedings. (*See* Dooley Decl. ¶¶ 20-22, 32.)

Furthermore, the Petitioners have already obtained a partial final award from the LCIA, and that award has already been recognized in the British Virgin Islands (where Coniston is incorporated), and steps are being taken to recognize the award in Cyprus (where the other LCIA Claimants are located) and in Russia (where the fraud took place). (*Id.* ¶ 19.) The Petitioners

anticipate a significant financial award in the Arbitration Proceedings, given that the issue of liability has already been decided in their favor. (*Id.* ¶ 18.) The Petitioners anticipate that the discovery sought under this application will enable the Petitioners to identify assets of Coniston, including assets that may have been fraudulently transferred by Coniston to members of the Mints family or other participants in the fraudulent scheme. (*Id.* ¶ 34.) The Petitioners intend to bring judgment-recognition and enforcement actions in connection with this award, and will commence actions abroad to freeze and/or recover the assets identified via this discovery wherever they can locate assets of Coniston. (*Id.*)

These anticipated judgment recognition and enforcement proceedings also qualify as adjudicative foreign proceedings for purposes of Section 1782. That is because "issues of asset identification and ownership are examples of adjudicative facts" that a foreign court must determine in judgment recognition and enforcement proceedings. *In re Application of Lake Holding & Fin. S.A.*, No. 20-MC-652, 2021 WL 2581427, at *14 (S.D.N.Y. June 23, 2021).

*Third*, the Petitioners are clearly "interested person[s]" authorized to bring this application. "No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may be invoke § 1782." *Intel*, 542 U.S. at 256. The Petitioners were parties to the underlying arbitration proceedings that gave rise to the partial final award, are parties to the ongoing High Court Proceedings and will be parties to the future foreign judgment recognition and enforcement actions.

## II. THE *INTEL* DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THE APPLICATION

The Supreme Court has identified four factors that a district court should consider when ruling on a § 1782 request: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the

proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. The *Intel* factors each weigh in favor of granting the application and permitting the discovery sought under the subpoenas.

*First*, the Respondents will not be parties to or participants in the foreign proceedings. As the Court in *Intel* explained, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* at 264. Because the Respondents would not be participants in the foreign proceeding, the information sought under the application would otherwise be unavailable. Accordingly, this factor weighs in favor of the application.

*Second*, foreign courts would be receptive to the assistance of a U.S. court and the discovery sought under the application. With respect to the High Court Proceedings, nothing in English law would preclude the use of the information requested from the Respondents, *i.e.*, relevant evidence of wire or banking activity by Coniston. Rather, the English courts would be open to receiving the sort of information sought under the application. (Dooley Decl. ¶ 33.) With respect to the anticipated judgment recognition and enforcement proceedings, while the venue for those proceedings depends in part on the location of the dissipated assets, courts are generally receptive to evidence, including bank records, to show whether or to what extent a judgment debtor has moved assets to try to make itself judgment-proof. (*Id*. ¶ 35.)

*Third*, the application does not conceal any attempt to circumvent foreign proof-gathering restrictions. The application seeks information which is intended to be used in pending or

contemplated foreign proceedings. The information being sought (*i.e.*, bank transfer records) is of a type which is routinely sought, provided, and used in a wide variety of proceedings. There are no applicable restrictions under English law, and no reason to think that such discovery would not circumvent or contravene any relevant proof-gathering restrictions in other jurisdictions where future proceedings may be brought. (*Id*. ¶ 33.) This factor also weighs in favor of the requested discovery.

*Finally*, the information sought under the application is not unduly intrusive or burdensome. The subpoenas are narrowly tailored to seek relevant information concerning the assets of Coniston and the disposition of those assets in order to enforce a judgment. Bank records, such as the wire transfer records identified in the subpoenas, are stored as a matter of course and are routinely sought from and produced by banks located in this District under Section 1782. *See, e.g.*, *In re Application of Hornbeam Corp.*, No. 14-MC-424-VSB, 2014 WL 8775453, at *1, 5 (S.D.N.Y. Dec. 24, 2014) (noting that "New York Banks routinely receive and comply with similar subpoenas issued pursuant to 28 U.S.C. §1782" and granting discovery of bank records from, *inter alia*, Citibank, N.A. and Deutsche Bank AG); *In re Application of Lake Holding & Finance S.A.*, No. 20-MC-652-RA, 2021 WL 2581427 (S.D.N.Y. June 26, 2021) (granting discovery from, *inter alia*, Citibank, N.A.). The fourth and final *Intel* factor thus also weighs in favor of granting the application.

### III. NO OTHER FACTORS WEIGH AGAINST THE REQUESTED DISCOVERY

There are no factors which would weigh against allowing the requested discovery. The Second Circuit has indicated that the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign courts by example to provide similar means of assistance to our courts" should inform a court's analysis of an application under § 1782. *In re Application of Malev Hungarian Airlines*, 964 F.2d

97, 101 (2d Cir. 1992). Consistent with those aims, courts "should liberally favor assistance to foreign courts" when presented with § 1782 applications. *In re Letter of Request From Boras Dist. Court*, 153 F.R.D. 31, 33 (E.D.N.Y. 1994). Here, the goals of § 1782 would be fulfilled by granting the application, because the discovery sought would assist the Petitioners in both pending and anticipated foreign proceedings. Accordingly, the application should be granted.

## IV. THE APPLICATION SHOULD BE GRANTED *EX PARTE*.

Finally, the Court should grant the Petitioners' application *ex parte*. As the Second Circuit has recognized, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012). To the extent the Respondents disagree with the discovery sought, they can "later challenge any discovery request by moving to quash" under Rule 45. *Id*.

## CONCLUSION

For the stated reasons, the Petitioners respectfully request that this Court grant the application and authorize the service of the subpoenas on the Respondents.

Dated: February 14, 2022

Respectfully submitted,

STEPTOE & JOHNSON LLP

By: */s/ Charles Michael*
    Charles Michael
    Jason Meade
    1114 Avenue of the Americas
    New York, New York 10036
    (212) 506-3900
    cmichael@steptoe.com
    jmeade@steptoe.com

*Counsel for Petitioners*