UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
*In re: Ex Parte Application of Public Joint-*              :
*Stock Company Bank Otkritie Financial*                     :
*Corporation and Public Joint-Stock Company*                :
*National Bank Trust for an Order Pursuant to*              :    22-mc-50 (VSB)
*28 U.S.C. § 1782*                                          :
                                                            :    **OPINION & ORDER**
------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      Before me is the ex parte application of Public Joint-Stock Company Bank Otkritie Financial Corporation ("Bank Otkritie") and Public Joint-Stock Company National Bank Trust ("NBT," together, "Petitioners"), for an order pursuant to 28 U.S.C. § 1782 authorizing limited discovery for use in foreign proceedings.  (Doc. 1.)  Because I find that Petitioners meet the requirements to obtain discovery pursuant to § 1782, the application is GRANTED.

**I.**       **Background and Procedural History**[1]

      Petitioners seek banking records from three bank entities—Citibank, N.A., Deutsche Bank Trust Company Americas, and Deutsche Bank Securities, Inc. (collectively, "Respondents")—related to certain transfers of assets made by Coniston Management Limited ("Coniston"), a British Virgin Islands company.  (Mem. 1.)[2]  Petitioners intend to use these banking records as evidence to demonstrate that Coniston has been shielding assets from Petitioners in order to evade liability arising from two foreign proceedings:  an arbitration proceeding before the London Court of International Arbitration ("LCIA"), and a parallel

---

[1] The facts contained in this section are provided to set forth background and context, and should not be construed as factual findings.

[2] "Mem." refers to the memorandum of law in support of Petitioners' ex parte application.  (Doc. 2.)

proceeding before the High Court of Justice in London (the "High Court"). (*Id*.)

The two proceedings arise out of a fraudulent scheme consisting of a series of complex transactions directed by the family of Boris Mints ("Mints"), a prominent Russian businessman, and O1 Group Limited (the "O1 Group"), a holding company affiliated with the Mints family. (*Id*. at 2.) Before the transactions took place, Petitioner Bank Otkritie, one of Russia's largest full-service commercial banks, made loans of approximately $500 million to certain companies in the O1 Group. (*Id*. at 2–3.) The loans were largely secured by pledges of valuable shares held by Coniston and two related entities in O1 Properties Limited, the owner of "a substantial real estate portfolio in Moscow." (*Id*. at 3.) "The essence of the fraudulent scheme was (i) to cause a special-purpose vehicle with no material assets to issue long-term, illiquid and unrated bonds, with negligible interest payable until maturity in 2032; (ii) to induce the Petitioners to purchase those bonds for much more than they were really worth; and (iii) for the proceeds to be used by the O1 Group borrowers to repay their loans to Bank Otkritie early, thereby purportedly extinguishing their debts and terminating the associated security agreements." (*Id*.) As a result, the loans were extinguished, but Bank Otkritie received almost nothing of value in return. (*Id*.)

In January 2018, Coniston and the two related entities that had pledged shares in relation to the Bank Otkritie loans commenced the arbitration proceeding before the LCIA, seeking declarations that, among others, their pledges of stock had been validly terminated. (*Id*.) Bank Otkritie and its affiliate NBT asserted counterclaims, alleging that the transactions were a fraudulent scheme. (*Id*. at 4.) The LCIA tribunal found that the Mints family used and directed Coniston to perpetuate the fraudulent scheme for their benefits, and that Coniston, as well as the other related entities, are liable for Petitioners' financial loss. (*Id*.) The amount of damages is yet to be determined. (*Id*.) In June 2019, Petitioners filed a parallel proceeding in the High

Court against the members of the Mints family, alleging that the Mints family (1) participated in the fraudulent transactions, and (2) engaged in certain "associated fraudulent transfer activity" aimed at placing their assets beyond the reach of the Petitioners. (*Id*. at 5.) The proceeding before the High Court is ongoing. (*Id*.)

On February 14, 2022, Petitioners filed the instant ex parte motion under § 1782, along with supporting documents, seeking to subpoena banking records from Respondents for use in the proceedings before the LCIA and the High Court. (Docs. 1–4.)

## II.     Applicable Law

"[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (collecting cases).

Section 1782 contains three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (alteration in original) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)). "Once the statutory requirements are met, a district court may order discovery under § 1782 in its discretion, taking into consideration the 'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)). "The Supreme Court has identified four" additional discretionary factors relevant to this determination:

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.

*Mangouras*, 980 F.3d at 97–98 (internal quotation marks omitted) (citing, ultimately, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)). "[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302 (citation omitted).

### III.   **Application**

Petitioners have satisfied the three statutory requirements. First, Respondents are "found" in this District for purposes of § 1782, because their public filings with the Securities and Exchange Commission and the New York Department of Financial Services show that they are physically located in New York. (Michael Decl. Exs. 1–3.)[3] *See In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) ("[I]f a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district."); *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (confirming that the term "found" "extends to the limits of personal jurisdiction consistent with due process").

---

[3] "Michael Decl." refers to the declaration of Charles Michael in support of Petitioners' ex parte application. (Doc. 4.)

4

Second, the discovery sought is "for use" in a foreign proceeding or tribunal. "A § 1782 applicant satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding." *Mees*, 793 F.3d at 295; *see also id.* at 298 ("'[F]or use in a proceeding' [under § 1782] indicates something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail."). "[A] Section 1782 applicant must establish that he or she has the practical ability to inject the requested information into a foreign proceeding," *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017), but the discoverability or admissibility of the evidence in the foreign proceeding is not dispositive of this determination, *see In re XPO Logistics, Inc.*, 15 Misc. 205 (LGS), 2017 WL 6343689, at *5 (S.D.N.Y. Dec. 11, 2017) ("The Supreme Court addressed the question of whether foreign discoverability is a condition to obtaining documents under § 1782, and held that it is not."); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 77 (2d Cir. 2012) ("Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered 'for use in a proceeding in a foreign or international tribunal.'"). Here, Petitioners explain that the banking records they seek will be used in the proceeding before the High Court as evidence that the Mints family have moved their assets beyond Petitioners' reach in an effort to escape liability for their scheme. (Mem. 6, 8.)[4]

---

[4] Petitioners argue that the "anticipated judgment recognition and enforcement proceedings" in relation to the LCIA award "also qualify as adjudicative foreign proceedings" under § 1782. (*See* Mem. 12.) However, the Court of Appeals has clarified that "international arbitral panels created exclusively by private parties are not foreign or international tribunals within the meaning of § 1782." *In re Application and Petition of Hanwei Guo*, 965 F.3d 96, 107 (2d Cir. 2020) (internal quotation marks omitted) (considering a "range of factors" to determine whether a certain entity is a "state-sponsored adjudicatory body" that qualifies as a "foreign or international tribunal" under § 1782). Here, Petitioners do not present any evidence to show that LCIA is a "state-sponsored" tribunal and not a tribunal that is "created exclusively by private parties," *id.*

To the extent that Petitioners are seeking this Court's assistance in the enforcement of the arbitration award—instead of in the arbitration proceeding itself—they do not specify any enforcement proceedings they have initiated or plan to bring. Petitioners only mentioned that they "intend" to "initiate enforcement proceedings wherever they can

Third, Petitioners, who are parties to the High Court proceeding, are "interested person[s]" within the meaning of § 1782. *See In re Degens*, 20-mc-237 (JGK) (RWL), 2020 WL 4252725, at *4 (S.D.N.Y. July 24, 2020) ("A party to a foreign litigation is an 'interested person' within the ambit of § 1782.").

Because Petitioners meet the three statutory factors, I proceed to determine whether the discretionary *Intel* factors counsel against permitting the requested discovery. *See Mees*, 793 F.3d at 297–98 (citing *Intel*, 542 U.S. at 264–65). I find that the *Intel* factors do not counsel against granting the requested discovery. First, no Respondent is a party to the foreign proceeding. As "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach," the banking records sought from Respondents, which are "available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Second, there is no indication that the High Court would be unreceptive to federal-court judicial assistance. (*See e.g.* Dooley Decl. ¶ 33 (stating that "the evidence [Petitioners] seek would be received without issue in the English courts.").)[5] *Cf. Intel*, 542 U.S. at 264–65. Third, Petitioners' request does not seek "to circumvent" the rules and procedures of the English courts, *Mangouras*, 980 F.3d at 98, as there are no restrictions applicable to these banking records under the English law, (Dooley Decl. ¶ 33), nor is there any indication that such discovery would not be allowed in any other jurisdictions where the enforcement action may be bought. Fourth, the requested discovery is not unduly intrusive or burdensome. *See Mangouras*, 980 F.3d at 98.

---

locate assets of Coniston," (Mem. 6), and that the LCIA award "has already been recognized in the British Virgin Islands," with "steps . . . being taken to recognize the award in Cyprus . . . and in Russia," (*id.* 8). Although a foreign proceeding under § 1782 need not be "pending" or "imminent," Petitioners do need more than these brief statements to demonstrate that the enforcement proceedings are "within reasonable contemplation." *Intel Corp.*, 542 U.S. at 259. Nevertheless, this issue does not defeat Petitioner's application, because the other proceeding, the one before the High Court, qualifies as a "foreign or international tribunal[]" under § 1783.

[5] "Dooley Decl." refers to the declaration of Neil Dooley in support of Petitioners' ex parte application. (Doc. 3.)

Petitioners' proposed order will authorize them to serve subpoenas on Respondents for "[c]opies of any and all orders, instructions, or wire transfers, where the paying or receiving party was [Coniston], in an amount equal to or exceeding $50,000 . . . from January 1, 2017 to the present." (*See* Doc. 1-1; Michael Decl. Ex. 5 at 8.)  I find the proposed subpoena to be narrowly tailored to the information Petitioners are seeking, and not unduly burdensome or intrusive, as the sought materials are routinely produced by banks to satisfy discovery requests.  *See, e.g., In re Rodriguez Guillen*, 20-MC-102 (ALC), 2020 WL 3497002, at *3 (S.D.N.Y. June 29, 2020) (noting that a third-party bank "should be able to search for and produce . . . records of wire transfers without significant burden").

## IV.   Conclusion

Accordingly, Petitioners' ex parte application for an order pursuant to 28 U.S.C. § 1782 is GRANTED.  The Petitioners are authorized to issue and serve subpoenas on Respondents in the form of the subpoenas attached as Exhibits 5–7 to the Michael Declaration, (Doc. 4), for the production of the documents requested therein.  Respondents shall comply with the subpoenas in accordance with the Federal Rules of Civil Procedure, the Local Rules, and my Individual Rules, including with respect to their rights to object to or move to quash the subpoenas.  It is further ORDERED that a copy of this Opinion & Order shall be served with each discovery subpoena.

The Clerk of Court is respectfully directed to terminate the open motion on the docket.
SO ORDERED.

Dated: July 1, 2022
       New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge