**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION, UNDER 28 U.S.C. § 1782, OF PUBLIC JOINT STOCK COMPANY BANK OTKRITIE FINANCIAL CORPORATION AND PUBLIC JOINT-STOCK COMPANY NATIONAL BANK TRUST | 22 Misc. 50 |

**MEMORANDUM OF LAW IN SUPPORT OF SUPPLEMENTAL
<u>*EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. §
1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................................. 1

BACKGROUND .................................................................................................................................... 1

    The London Court of International Arbitration Tribunal Proceedings ................................. 2

    The English High Court Proceedings ..................................................................................... 2

    Commerzbank's Role .............................................................................................................. 2

    The Relevance of the Records Sought in This Proceeding .................................................... 3

DISCUSSION ........................................................................................................................................ 3

    I. Petitioners Satisfy the Statutory Requirements of Section 1782 ........................................ 4

    II. The *Intel* Discretionary Factors Weigh in Favor of Granting the Application ................ 6

    III. No Other Factors Weigh Against the Requested Discovery ........................................... 8

    IV. The Application Should Be Granted *Ex Parte* ................................................................ 8

CONCLUSION ...................................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page(s)**

*Brandi-Dohrn v. 1KB Deutche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012)..................................................................................................4

*Gushlak v. Gushlak*,
   486 F. App'x 217 (2d Cir. 2012) .........................................................................................8

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)................................................................................................4

*In re Godfrey*,
   526 F. Supp. 2d 417 (S.D.N.Y. 2007).................................................................................4

*Intel Corp. v. Advanced Micro Devices*,
   542 U.S. 241 (2004)....................................................................................................4, 5, 6

*Lancaster Factoring Co. Ltd. v. Mangone*,
   90 F.3d 38 (2d Cir. 1996) ....................................................................................................4

**Statutes**

28 U.S.C. § 1782...................................................................................................................3, 4, 5, 6

**INTRODUCTION**

By this supplemental *ex parte* application, Public Joint-Stock Company Bank Otkritie Financial Corporation and Public Joint-Stock Company National Bank Trust (collectively, "Petitioners") seek, under 28 U.S.C. § 1782, limited discovery from a single bank – Commerzbank AG ("Commerzbank") – for use in two foreign proceedings.

As the Court is aware, Petitioners previously applied for Section 1782 subpoenas for Citibank, N.A., Deutsche Bank Trust Company Americas, and Deutsche Bank Securities, Inc. *See* ECF 1.  The Court granted the application on July 1, 2022.  *See* ECF 9 ("Order").  Those subpoenas sought banking records regarding a fraud perpetrated by the Russian businessman Boris Mints and his company, Coniston Management Limited ("Coniston").  Petitioners intended to use the evidence in proceedings in the London Court of International Arbitration and the High Court of Justice in London.

In the months since the subpoenas were served, Petitioners received a limited number of documents from Citibank, N.A., and no documents at all from the Deutsche Bank entities.  *See* Declaration of Neil Dooley ¶¶ 10-14 (Mar. 13, 2023).  Meanwhile, Petitioners have learned that Commerzbank likely possesses banking records relevant to the Coniston fraud.  Petitioners therefore respectfully request that this Court authorize an additional subpoena on Commerzbank. In light of the liberal interpretation of Section 1782 to assist foreign tribunals in the administration of justice, the narrowly tailored subpoena is appropriate, and the Application should be granted.

**BACKGROUND**

This application stems from the same set of facts underlying Petitioners' February 2022 application, and Petitioners hereby incorporate by reference and in full the previous

1

Memorandum of Law (ECF 2) and Declaration of Neil Dooley (ECF 3) ("First Dooley Decl."). The following events have occurred or come to light since the Court's July 2022 Order.

**The London Court of International Arbitration Tribunal Proceedings**

The London Court of International Arbitration ("LCIA") Tribunal has fixed a hearing for 8-12 May 2023 to determine the loss the Petitioners have suffered resulting from the fraud perpetrated by Coniston. *See* Dooley Decl. ¶ 6.

**The English High Court Proceedings**

The Mints family applied to stay the Petitioners' claims, arguing that because of the involvement of Bank Otkritie, the Court could not lawfully enter a judgment, as that would amount to a dealing with "funds" or "economic resources" contrary to Regulation 11 of The Russia (Sanctions) (EU Exit) Regulations 2019 (Russia Regulations). *See id.* ¶ 7. The Mints defendants argued that the asset freeze prohibition in Regulation 11 of the Russia Regulations extended to causes of action, and thereby to the right of a designated person to pursue litigation. *See id.*

Following a four-day hearing in December 2022, Mrs. Justice Cockerill DBE dismissed the applications, by a judgment dated 27 January 2023, confirming that the Petitioners are not barred from pursuing their claims in the High Court and finding that judgment can lawfully be entered and is not a licensable activity because a cause of action is not a fund or economic resource and that payment of adverse costs (and security for costs) is a licensable activity. *See id.* ¶ 8.

**Commerzbank's Role**

At the time of the relevant transactions, Coniston banked with Rigensis Bank AS ("Rigensis Bank"). *See id.* ¶ 15; *see also* First Dooley Decl. ¶ 15. Rigensis Bank used

Commerzbank as an intermediary U.S. dollar correspondent bank. *See* Dooley Decl. ¶ 16; *see also* Dooley Decl. Ex. 1 at 6 (Agreement, Otkritie Advisory Servs. Ltd. & DeBlanc Secs. Ltd. (Feb. 20, 2014)).

**The Relevance of the Records Sought in This Proceeding**

As in the previous application, Petitioners seek banking records relating to Coniston. Unfortunately, in response to the subpoenas on Citibank and Deutsche Bank, Petitioners received almost no relevant documents. The Deutsche Bank entities insisted that they had no responsive records, *see* Dooley Decl. ¶ 14, and Citibank only provided records of 8 wire transfers, *id.* ¶ 11. Petitioners have reason to believe that a subpoena to Commerzbank may be more fruitful, and thus seek Commerzbank records in anticipation of using them in foreign proceedings in at least two ways.

First, evidence from Commerzbank showing that Coniston has moved assets in connection with the fraud are relevant to the High Court proceeding. Mints and his family clearly operated Coniston to perpetrate fraud, and there are indications that Commerzbank was used during that process. Second, banking records will be critical to enforcing the LCIA award. Wherever Coniston's assets can be located, Petitioners intend to bring enforcement proceedings, which will likely involve claims against third parties who have received the benefit of those assets. Coniston's Commerzbank banking records will shed light on where those assets are and what Coniston has done with them.

## DISCUSSION

Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a foreign or international tribunal," and that such order may be issued "upon the

3

application of any interested person." 28 U.S.C. § 1782.  If these requirements are satisfied, the court may, in its discretion, grant an application for discovery.  The Supreme Court has identified four factors that courts consider in exercising that discretion.  *See Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241, 264-75 (2004).  As set forth below, Petitioners satisfy the statutory requirements for relief under Section 1782 and the discretionary factors weigh in favor of granting the subpoena, as well.

**I.    PETITIONERS SATISFY THE STATUTORY REQUIREMENTS OF SECTION 1782**

A court may grant discovery under Section 1782 if "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. 1KB Deutche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).  All of the statutory requirements are satisfied here.

First, Respondent Commerzbank is found in the Southern District of New York.  "If a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district."  Order at 4 (quoting *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002)).  A company is also found where it is incorporated, headquartered, or where it is engaged in "systematic and continuous activities."  *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007).  In this case, Commerzbank is physically located in New York, based on public state regulatory records.  *See* Dooley Decl. Ex. 2 (Commerzbank New York Department of Financial Services listing).

Second, the discovery sought is for use in foreign proceedings.  The Second Circuit has held that a "proceeding" for purposes of Section 1782 must be one "in which an adjudicative function is being exercised." *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir.

4

1996). The proceeding may be one which is currently pending, or, as the Supreme Court has ruled, "the 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel*, 542 U.S. at 247. This requirement is met here. Just as with the previous application, the "banking records [Petitioners] seek will be used in the proceeding before the High Court as evidence that the Mints family have moved their assets beyond Petitioners' reach in an effort to escape liability for their scheme." Order at 5.

And the records will also be used in the LCIA enforcement proceedings. Petitioners have already obtained a partial final award from the LCIA, and that award has been recognized in the British Virgin Islands (where Coniston is incorporated), and Petitioners have initiated proceedings to recognize the award in Cyprus (where other LCIA claimants are located) and in Russia (where the fraud took place). *See* First Dooley Decl. ¶ 19. The Commerzbank records will enable Petitioners to identify more assets of Coniston, including those fraudulently transferred, as well as initiate any further necessary judgment-recognition and enforcement actions in connection with the LCIA award. These anticipated judgment recognition and enforcement proceedings also qualify as adjudicative foreign proceedings for purposes of Section 1782. That is because "issues of asset identification and ownership are examples of adjudicative facts" that a foreign court must determine in judgment recognition and enforcement proceedings. *In re Application of Lake Holding & Fin. S.A.*, No. 20-MC-652, 2021 WL 2581427, at *14 (S.D.N.Y. June 23, 2021).

Third, Petitioners are clearly "interested persons" within the meaning of Section 1782. "A party to a foreign litigation is an 'interested person' within the ambit of § 1782." Order at 6 (quoting *In re Degens*, 20-mc-237 (JGK) (RWL), 2020 WL 4252725, at *4 (S.D.N.Y. July 24,

2020)). As before, the Petitioners were parties to the underlying arbitration proceedings that gave rise to the partial final award, are parties to the ongoing High Court proceedings and will be parties to the future foreign judgment recognition and enforcement actions.

## II. THE *INTEL* DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THE APPLICATION

The Supreme Court has identified four factors that a district court should consider when ruling on a Section 1782 request: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding'"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. The *Intel* factors each weigh in favor of granting the Application and permitting discovery sought under the subpoena.

*First*, Commerzbank will not be party to or a participant in the foreign proceedings. As the Court in *Intel* explained, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* at 264. Because Commerzbank would not be participants in the foreign proceeding, the information sought under the application would otherwise be unavailable. Accordingly, this factor weighs in favor of the application. *See* Order at 6 ("First, no Respondent is a party to the foreign proceeding.").

Second, foreign courts would be receptive to the assistance of a U.S. court and the discovery sought under the application. With respect to the High Court Proceedings, nothing in English law would preclude the use of the information requested from Commerzbank, *i.e.*,

relevant evidence of wire or banking activity by Coniston. Rather, the English courts would be open to receiving the sort of information sought under the application. *See* Dooley Decl. ¶ 8; *see also* Order at 6 ("Second, there is no indication that the High Court would be unreceptive to federal-court judicial assistance."). With respect to the anticipated judgment recognition and enforcement proceedings, while the venue for those proceedings depends in part on the location of the dissipated assets, courts are generally receptive to evidence, including bank records, to show whether or to what extent a judgment debtor has moved assets to try to make itself judgment-proof. Dooley Decl. ¶ 18; *see also* First Dooley Decl. ¶¶ 31-35.

Third, the application does not conceal any attempt to circumvent foreign proof-gathering restrictions. *See* Order at 6 ("Third, Petitioners' request does not seek 'to circumvent' the rules and procedures of the English courts."). The application seeks information which is intended to be used in pending or contemplated foreign proceedings. The information being sought (bank transfer records) is of a type which is routinely sought, provided, and used in a wide variety of proceedings. There are no applicable restrictions under English law, and no reason to think that such discovery would not circumvent or contravene any relevant proof-gathering restrictions in other jurisdictions where future proceedings may be brought. This factor also weighs in favor of the requested discovery.

Finally, the information sought under the application is not unduly intrusive or burdensome. *See id.* at 6 ("Fourth, the requested discovery is not unduly intrusive or burdensome."). The subpoenas are narrowly tailored to seek relevant information concerning the assets of Coniston and the disposition of those assets in order to enforce a judgment. *See* Order at 7 ("I find the proposed subpoena to be narrowly tailored to the information Petitioners are seeking."). Bank records, such as the wire transfer records identified in the subpoenas, are stored

as a matter of course and are routinely sought from and produced by banks located in this District under Section 1782.  *See, e.g.*, *In re Application of Hornbeam Corp.*, No. 14-MC-424-VSB, 2014 WL 8775453, at *1, 5 (S.D.N.Y. Dec. 24, 2014) (noting that "New York Banks routinely receive and comply with similar subpoenas issued pursuant to 28 U.S.C. §1782"); *In re Application of Lake Holding & Finance S.A.*, 2021 WL 2581427, at *18. The fourth and final *Intel* factor thus also weighs in favor of granting the application.

### III. NO OTHER FACTORS WEIGH AGAINST THE REQUESTED DISCOVERY

There are no factors which would weigh against allowing the requested discovery. The Second Circuit has indicated that the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign courts by example to provide similar means of assistance to our courts" should inform a court's analysis of an application under Section 1782.  *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992). Consistent with those aims, courts "should liberally favor assistance to foreign courts" when presented with § 1782 applications.  *In re Letter of Request From Boras Dist. Court*, 153 F.R.D. 31, 33 (E.D.N.Y. 1994).  Here, the goals of Section 1782 would be fulfilled by granting the application, because the discovery sought would assist the Petitioners in both pending and anticipated foreign proceedings.  Accordingly, the application should be granted.

### IV. THE APPLICATION SHOULD BE GRANTED *EX PARTE*

Finally, the Court should grant the Petitioners' application *ex parte*. As the Second Circuit has recognized, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012).  To the extent Commerzbank disagrees with the discovery sought, they can "later challenge any discovery request by moving to quash" under Rule 45.  *Id.*

**CONCLUSION**

For the stated reasons, Petitioners respectfully request that this Court grant the Application and authorize service of the subpoena, attached as Exhibit 3 to the Declaration of Neil Dooley, on Commerzbank.

Dated: March 13, 2023

Respectfully submitted,

STEPTOE & JOHNSON LLP

By: */s/ Charles Michael*
 Charles Michael
 Steptoe & Johnson LLP
 1114 Avenue of the Americas
 New York, NY 10036
 (212) 506-3900
 cmichael@steptoe.com

*Counsel for Petitioners*